IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

PATSY GONZALES,

    Plaintiff,

v.

ALLIED INSURANCE COMPANY,

    Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

**COMES NOW** Plaintiff, PATSY GONZALES, by and through her undersigned counsel, and hereby submits this her Complaint against Defendant, ALLIED INSURANCE COMPANY, and in support of her Complaint, alleges and avers as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's bad faith conduct, unreasonable delay, and unreasonable denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

## PARTIES

2. Plaintiff, Patsy Gonzales ("Plaintiff") is a natural person and Citizen of Colorado, domiciled in Thornton, Colorado.

3. Defendant, Allied Insurance Company ("Defendant" or "Allied"), is an insurance company organized and existing under the laws of the state of Iowa and is licensed to do and doing business in the state of Colorado.

## JURISDICTION AND VENUE

4. This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff is the owner of real property located at 8491 Essex St., Thornton, Colorado, 80229 (the "Property").

6. Plaintiff is the owner of certain personal property that was located within the Property ("Personal Property").

7. The Property contained asbestos.

8. Plaintiff purchased a Homeowners Policy of insurance from Allied under Policy Number HMC 0015063131-3 (the "Policy"). A copy of the Policy has been attached hereto as **Exhibit "A."**

9. The Policy was issued with effective dates of February 7, 2017, through February 7, 2018 (A copy of the Policy is attached hereto as Exhibit "A").

10. The Policy is a replacement cost value policy.

11. The Policy covers loss to the Dwelling and Personal Property contained therein.

12. The Policy provides Dwelling Property coverage in the amount of $292,375.00.

13. The Policy provides Personal Property coverage in the amount of $163,730.00.

14. Plaintiff paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of them under the Policy.

15. Under the Policy, Allied agreed to adjust all losses with Plaintiff fairly and timely.

16. Under the Policy, Allied is obligated to pay for direct physical loss and damage to Plaintiff's Property and Personal Property resulting from fire.

17. On or about August 29, 2017, during the Policy period, Plaintiff suffered a covered loss to her Property and Personal Property due to fire.

18. On or about August 29, 2017, Plaintiff timely reported the covered loss to Allied.

19. On or about August 29, 2017, Plaintiff made a claim for Dwelling coverage and Personal Property coverage under the Policy.

20. Allied assigned claim number 853611GF to the Personal Property and Dwelling Property loss.

21. Plaintiff was forced to secure temporary housing due to the damages caused to the Property by the fire.

22. The damage sustained to the Dwelling Property from the fire constituted a total loss under the Policy.

23. The damage sustained to the Personal Property from the fire constituted a total loss under the Policy.

24. On or about August 29, 2017, Allied assigned its outside adjuster, Rachel Lucas, to investigate and adjust the loss.

25. On or about August 29, 2017, Allied assigned its desk adjuster, Joelie Kuklis, to investigate and adjust the loss.

26. On or about August 29, 2017, Allied representative, Rachel Lucas, performed a site inspection of the Property.

27. On or about August 29, 2017, Allied provided an advance payment in the amount of $5,000.00 for the Personal Property loss.

28. Allied's advance payment equaled less than five percent (5%) of the loss suffered by Plaintiff.

29. On or about August 30, 2017, Plaintiff provided Allied with an inventory of damaged Personal Property resulting from the fire. See Plaintiff's Personal Property Inventory attached hereto as **Exhibit "B."**

30. Plaintiff's Personal Property Inventory included over six hundred and sixty items of damaged personal property items resulting from the fire.

31. On or about September 9, 2017, Allied completed its adjustment of Plaintiff's Personal Property claim.

32. In October 2017, Allied received bids for asbestos abatement of the Property.

33. On or about October 27, 2017, nearly two months after the fire, Plaintiff requested Allied provide an update as to the investigation and adjustment of her Dwelling Property and Personal Property claims.

34. On or about October 27, 2017, nearly two months after the fire, Plaintiff requested a face to face meeting with Allied representative, Rachel Lucas, to discuss the status of her claim.

35. On or about December 7, 2017, Allied representative, Joelle Kuklis, provided Plaintiff with an accounting of the covered Personal Property Inventory submitted by Plaintiff over three months earlier on August 30, 2017. See Allied's Personal Property Inventory attached hereto as **Exhibit "C."**

36. Allied's Personal Property Inventory indicated that it was completed on September 9, 2017.

37. On or about December 19, 2017, Plaintiff provided Allied with a supplemental inventory of damaged Personal Property resulting from the fire.

38. As a result of Allied's delay in the adjustment of her claim, Plaintiff retained Claim Adjusters Group, Inc. ("CAG"), a Colorado licensed public adjusting firm, to assist with the timely investigation and adjustment of her claim.

39. On or about December 30, 2017, Allied advised Plaintiff that her claim had been reassigned to a new field adjuster, Chadwick Miller, for investigation and adjustment.

40. On or about December 31, 2017, Plaintiff's representative, CAG, requested that Allied tender policy limits for Dwelling Property.

41. On or about December 31, 2017, Plaintiff's representative, CAG, requested that Allied tender coverage for Personal Property.

42. On or about January 2, 2018, Allied representative, Chadwick Miller, advises Plaintiff that Allied will issue payment for damaged Personal Property.

43. On or about January 2, 2018, Allied representative, Chadwick Miller, advises Plaintiff that its claim has been delayed due to Allied's request for asbestos abatement bids.

44. On or about January 2, 2018, one hundred twenty-six days after receiving Plaintiff's personal property inventory, Allied provided Plaintiff a copy of its personal property damage estimate which outlined replacement cost value covered damages in the amount of $106,457.71. A copy of Allied's Personal Property Damage Estimate is attached hereto as **Exhibit "D."**

45. On or about January 10, 2018, Plaintiff's representative, CAG, for a second time, requested that Allied tender coverage for Personal Property.

46. On or about January 16, 2018, one hundred thirty-eight days after receiving Plaintiff's personal property inventory, Allied provided Plaintiff with an estimate ("Allied's Dwelling Property Estimate") that outlined $255,334.83 in replacement cost covered damages and

$252,783.24 in actual cash value covered damages. A copy of Allied's Dwelling Property Estimate Damage Estimate is attached hereto as **Exhibit "E."**

47. Allied's Dwelling Property Estimate reflected that it had been entered on August 29, 2017, over ninety days prior to being provided to Plaintiff.

48. On or about January 16, 2018, one hundred thirty-eight days after receiving Plaintiff's personal property inventory, Allied issued an actual cash value payment to Plaintiff for her Personal Property loss in the amount of $64,607.55.

49. On or about January 17, 2018, Plaintiff's representative, CAG, submitted a proof of loss for the Personal Property. See CAG Correspondence attached hereto as **Exhibit "F."**

50. On or about January 22, 2018, Allied issued an actual cash value payment to Plaintiff for her Dwelling Property loss in the amount of $252,783.24.

51. On or about January 24, 2018, Plaintiff's representative, CAG, for a fourth time, requested that Allied tender coverage for Personal Property. See CAG Correspondence attached hereto as **Exhibit "G."**

52. On or about January 25, 2018, nearly five months after the fire loss, Allied advised Plaintiff it was sending a representative to investigate and adjust the non-salvaged Personal Property that remained in the Dwelling Property.

53. On or about January 25, 2018, CAG requested an explanation for Allied's decision to investigate and adjust the non-salvaged Personal Property that remained in the Dwelling Property, which further delayed the asbestos abatement process, and further delayed the tender of coverage for the Plaintiff's Personal Property. See CAG Correspondence attached hereto as **Exhibit "H."**

54. On or about February 26, 2018, Allied advised Plaintiff that her claim had been reassigned to a contents adjuster, Al Dye, to expedite the contents portion of the claim.

55. On or about March 22, 2018, Plaintiff's representative, CAG, for a fifth time, requested that Allied tender coverage for Personal Property.

56. On or about April 2, 2018, Plaintiff's representative, CAG, requested that Allied provide an update as to its contents estimate.

57. On or about April 16, 2018, Plaintiff's representative, CAG, requested an update from Allied on when it would finish its evaluation and estimate for the Personal Property loss.

58. On or about April 17, 2018, Plaintiff's representative, CAG, for a second time, requested an update from Allied on when it would finish its evaluation and estimate for the Personal Property loss.

59. On or about May 1, 2018, Plaintiff's representative, CAG, for a third time, requested that Allied provide an update as to its contents estimate.

60. On or about May 7, 2018, Plaintiff's representative, CAG, for a fourth time, requested that Allied provide an update as to its contents estimate.

61. On or about May 8, 2018, Plaintiff's representative, CAG, for a fifth time, requested an update from Allied on when it would finish its evaluation and estimate for the Personal Property loss.

62. On or about June 1, 2018, two hundred seventy-five days since receiving Plaintiff's Personal Property Inventory, Allied tendered payment for the personal property policy limits.

63. Asbestos abatement requires removal and destruction of all personal property from the Dwelling Property for health and safety.

64. Asbestos abatement could not begin before Plaintiff's Personal Property claim has been adjusted by Allied.

65. Plaintiff cannot begin repair to her to Dwelling Property until the asbestos spill abatement is completed.

66. Allied's delay in the adjustment of this claim has resulted in the displacement of Plaintiff from her home.

67. Plaintiff has fulfilled all duties required of them under the policy after discovery of the loss.

68. Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, has been excused from performance by the acts, representations, or conduct of Allied.

### FIRST CLAIM FOR RELIEF
(Common Law Bad Faith)

69. Plaintiff realleges and reaffirms Paragraphs 1-68 as if fully set forth herein.

70. Under the Policy and Colorado law, Allied had a duty to act reasonably and in good faith in the handling of Plaintiff's claims.

71. Under the Policy and Colorado law, Allied had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

72. Under the Policy and Colorado law, Allied owes Plaintiff the duty of good faith and fair dealing.

73. At all times material hereto, Allied had the non-delegable duty to investigate the claims objectively and not to look for ways to deny benefits or attempt not to pay the full amount owed.

74. At all times materials hereto, Allied owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

75. At all times material hereto, Allied had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claims presented to it, and then properly evaluate and timely pay those claims.

76. Allied sold Plaintiff the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

77. Allied knew that the Policy was purchased to protect the Property in the event of a loss.

78. Plaintiff has cooperated with Allied in the processing of the claims for covered benefits resulting from the fire occurring on or about August 29, 2017.

79. Plaintiff has cooperated with Allied in the investigation of the claims for covered benefits resulting from the fire occurring on or about August 29, 2017.

80. Plaintiff has not erected any obstacles to Allied's ability to evaluate Plaintiff's claims for covered benefits resulting from the fire occurring on or about August 29, 2017.

81. Allied disregarded the validity of Plaintiff's claims for direct physical loss and damage resulting from the fire occurring on or about August 29, 2017.

82. Allied failed to treat Plaintiff's interests with equal regard to its own.

83. Allied mischaracterized the evidence to the benefit of itself.

84. Allied failed to be open and honest in its dealings with Plaintiff.

85. Allied failed to conduct a full, fair, and prompt investigation of the claims.

86. Allied underpaid Plaintiff's claims without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

87. Allied underpaid Plaintiff's claims by failing to objectively evaluate Plaintiff's claims based on all available evidence, and not just evidence that Allied believes supports its position.

88. Allied decision to underpay the benefits owed to Plaintiff was intentional and not accidental.

89. Allied knew that its denial to pay the benefits owed under the Policy would cause Plaintiff financial hardship.

90. Allied failed to assist Plaintiff with the presentation of its claims.

91. Allied breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

92. Allied breached its duty of good faith and fair dealing by conducting an outcome-oriented investigation of Plaintiff's loss.

93. Allied breached its duty of good faith and fair dealing by underpaying Plaintiff's claims without having documented a reasonable investigation based upon all information.

94. Allied breached its duty of good faith and fair dealing by failing to pay for all direct physical loss and/or damage resulting from the hail and/or wind storm occurring on August 29, 2017.

95. Allied failed to conduct a thorough and timely investigation of Plaintiff's claims in accordance with insurance industry claims handling standards and practices.

96. Among other circumstances, Allied has committed unfair settlement practices including, without limitation:

 (a) Allied has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

 (b) Allied has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

 (c) Allied refuses to pay claims without conducting a reasonable investigation based upon all available information;

 (d) Allied has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

 (e) Allied has compelled Plaintiff to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions by such insureds;

 (f) Allied has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

 (g) Allied has misrepresented terms and conditions of the Policy in an attempt to influence its insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

 (h) Allied encourages its claims representatives to engage in unfair claims settlement practices against its insured, thereby violating applicable laws and regulations of the State of Colorado.

97. Allied's claims representatives received incentive-based compensation to close quickly or reduce claims payments.

98. Allied's representatives received income-based compensation to reduce claims payments made to Plaintiff on its claims for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

99. Allied improperly denied Plaintiff's claims by providing financial incentives to its personnel to determine claims handling.

100. Allied improperly set various claims handling goals to reduce the amount it paid on claims.

101. Allied improperly denied Plaintiff's claims to reduce its overall claims payments.

102. Allied improperly denied Plaintiff's claims to increase its profits.

103. Allied improperly denied Plaintiff's claims to maintain its loss ratio.

104. Allied improperly denied Plaintiff's claims to meet department goals.

105. Allied's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Plaintiff.

106. Allied improperly denied Plaintiff's claims by motivating its claims department to pay less on claims than are otherwise owed.

107. Allied improperly denied Plaintiff's claims to reduce the average amount paid on its overall claims.

108. Allied has committed unfair claims settlement practices as alleged in the preceding paragraphs of Plaintiff's Complaint.

109. Allied's conduct constitutes a bad faith breach of the insurance contract.

110. Allied has committed such actions with such frequency as to indicate a general business practice.

111. As a direct and proximate result of Allied's actions, Plaintiff has:

   (a) incurred increased costs to repair, restore and/or replace the significant property damage;
   (b) suffered damages as a proximate result of the misconduct alleged; and
   (c) suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Patsy Gonzalez, respectfully requests this Court enter judgment against Defendant, Allied Insurance Company, for damages resulting from its bad faith breach of insurance contract, including public adjuster fees, special damages resulting from the displacement of Plaintiff, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 1116)**

112. Plaintiff realleges and reaffirms Paragraphs 1-111 as if fully set forth herein.

113. Under C.R.S. § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

114. Under C.R.S. § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

115. Plaintiff is a first-party claimant within the meaning of C.R.S. § 10-3-1115(1)(b)(1).

116. Plaintiff suffered a loss covered by the Policy and submitted claims for that loss to Allied.

117. The claimed loss and damage submitted was covered by the Policy and Plaintiff was owed covered benefits under the Policy.

118. Allied delayed payment of covered benefits without a reasonable basis for its actions.

119. Allied denied payment of covered benefits without a reasonable basis for its actions.

120. Among other circumstances, Allied has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Plaintiff's Complaint.

121. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

122. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to timely investigate its insured's loss.

123. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by unnecessarily prolonging its investigation of Plaintiff's claims.

124. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly and timely investigate the dwelling loss.

125. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly and timely investigate the personal property loss.

126. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to tender payment of dwelling coverage for over five months despite the Property sustaining a total loss.

127. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by failing to update and inform Plaintiff of the progress of the adjustment her dwelling loss.

128. Allied unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to retain its own professionals to help properly adjust the loss to the Property.

129. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to incur the cost of the services of a public adjuster.

130. Only after continued persistence by Plaintiffs for five months, and Plaintiff engaging CAG, did Allied finally tender the actual cash value Dwelling Property coverage in the amount of $252,783.24.

131. Despite receipt of Plaintiffs' comprehensive Plaintiff's Itemized Content List and Supplemental Itemized Content List on August 30, 2017 and December 17, 2017 respectively,

Case 1:18-cv-01640-REB-KLM   Document 1   Filed 06/28/18   USDC Colorado   Page 15 of 17

Allied delayed final payment of the Personal Property contents for nine months without a reasonable basis for doing so.

132. Only after continued persistence by Plaintiffs for nine months, and Plaintiff engaging CAG, did Allied finally tender the policy limits of the personal property coverage of the Policy in the amount of $163,730.00.

133. Allied's failure to allow Plaintiff to repair the Dwelling Property has caused Plaintiff to be displaced from their home for over ten months, and accordingly, Allied has effectively delayed Plaintiff covered benefits under the Policy.

134. Allied delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

135. Despite clear evidence of covered damages to the Property, Allied continued to delay and deny indemnification of its own insured without a reasonable basis for doing so.

136. Allied's actions in the adjustment of Plaintiff's claims demonstrate an unmistakable complete delay of its Insured's benefits without a reasonable basis for its actions.

137. Despite receipt of Plaintiff's comprehensive estimate, Allied denied and delayed payment of covered benefits without a reasonable basis for doing so.

138. Allied unreasonably delayed and denied Plaintiff's claims to reduce its overall claims payments.

139. Allied unreasonably delayed and denied Plaintiff's claims to increase its profits.

140. Allied unreasonably delayed and denied Plaintiff's claims to maintain its loss ratio.

141. Allied unreasonably delayed and denied Plaintiff's claims to meet its department goals.

142. Allied unreasonably delayed and denied Plaintiff's claims by providing financial incentives to its personnel to determine claims handling.

143. Allied unreasonably delayed and denied Plaintiff's claims by motivating its claims department to pay less on claims, such as Plaintiff's claims for damages, than what is otherwise owed.

144. Allied unreasonably delayed and denied Plaintiff's claims to reduce the average amount paid on its overall claims.

145. Allied unreasonably delayed and denied Plaintiff's claims by asserting coverage positions that it knew were without merit.

146. Allied's actions were intended to dissuade Plaintiff in pursuing benefits due and owing under the terms of the Policy in bad faith.

147. Based upon the foregoing Paragraphs, Plaintiff is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Patsy Gonzales, respectfully requests this Court enter judgment against Defendant, Allied Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## **JURY TRIAL**

148. Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted this 28th day of June, 2018.

By: /s/ Timothy G. Burchard
Larry E. Bache, Jr. Esq.
Jonathan E. Bukowski, Esq.
Timothy G. Burchard, II, Esq.

        MERLIN LAW GROUP, P.A.
        1001 17th Street, Suite 1150
        Denver, CO 80202
        Telephone: 720.665.9680
        Facsimile: 720.665.9681
        E-Mail: lbache@merlinlawgroup.com
        E-Mail: jbukowski@merlinlawgroup.com
        E-Mail: tburchard@merlinlawgroup.com
        *Attorneys for Plaintiff*